Ibeagwa v. Mukasey Good morning, your honors. I'm Stephen Benedetto for Petitioner Sunday Josiah Ibeagwa. Your honors, this appeal presents issues that are not entirely unprecedented in this circuit's case law, but that arise out of facts that appear to be. At least in the context of an appeal from a finding of removal. This is a case in which the petitioner presented extensive testimonial evidence of past torture in Nigeria, buttressed by medical records suggesting the same. And the immigration judge having questions about the petitioner's identity asked the government not once, not twice, but three times to conduct investigations in Nigeria attempting to confirm or undermine the petitioner's claims to his identity and to torture. The immigration judge granted three separate stays, placed this burden on the government before the government's attorney indicated that the government wished to waive this investigation, could not find the information, did not want to conduct any additional investigation. And the immigration judge ultimately ruled, despite this lack of evidence, and despite placing this burden on the petitioner, excuse me, on the respondent government, that the petitioner was ultimately responsible for this failure to provide corroborative evidence. In addition, there are other issues here, specifically with regard to application of the Real ID Act, despite petitioner's verbal indication in court on record of his intent to apply for asylum on May 5th, 2005, prior to the effective date of the Real ID Act. The immigration judge applied to the Real ID Act, which did not go into effect until May 11th, 2005. Additionally, there are concerns about whether the immigration judge allowed the adverse credibility finding with respect to the limit issue of asylum to wash over the petitioner's claim to relief under the Convention Against Torture in violation of the Kazamas case. All three of these issues are fundamental due process issues that evade any procedural bar on the basis of an aggravated felony or an exhaustion argument. The respondent has responded to these claims by arguing solely these procedural bars. Again, the court can reach these issues, and I would submit it's compelled to remand on the basis of any one of these issues, regardless of whether it applies these doctrines. But these two doctrines do not apply for separate reasons. First, the aggravated felony argument I would submit, with all due respect, is a red herring. The immigration judge in this case specifically found that ground not to be sustained. Specifically found that the government had not met its burden of showing that Mr. Urbiago was removable on the basis of an aggravated felony. What the respondent is asking this court to do now is, on the basis of facts that were ever presented to the immigration judge, because the judge found Mr. Urbiago not to be removable, to reinstate that basis for removal without providing Mr. Urbiago an opportunity to supplement the record and establish this new standard under the Vidal case. Again, even if this procedural bar does apply, 8 U.S.C. 1252a2d still allows this court to reach the substantive due process merits of the claim. The second bar, the exhaustion bar, also doesn't apply. In that case, again, three of petitioner's claims involve questions of law that are expressly exempt under the exhaustion requirement, addressing respondent's 28-J submission of supplemental authority. Even that case, Tall v. McKasey, specifically recognized the questions of law are exempt from the exhaustion requirement. But more importantly, even the factual questions before this court, the abuse of discretion issues, were specifically raised by petitioner before the BIA. Petitioner specifically challenged whether corroborating evidence was reasonably available. Specifically presented facts to the BIA, under which the BIA could have reasonably concluded that corroborating evidence was not available. The corroboration that the immigration judge insisted he needed was some evidence from petitioner's home village or hometown, indicating that he was who he said he was, that he was the son of a tribal chief, he was a very renowned family. The immigration judge simply said, I want some evidence that this person is who he says he is. The petitioner responded at the time, this town is right in the middle of the Niger Delta. It was raised and pillaged by the Nigerian government in a very well-documented event that the trial court had extensive evidence on. It was uncontested by the government. And petitioner specifically testified that he didn't know where his relatives or friends were. Even if he could get back to this town, having been, you know, detained in Eloy, in the detention center, if he could get back or send word back, there's no way for him to find anybody that could confirm his identity. Which is why the government... If we got past all of these things, we would still be faced with the issue of the Real ID Act. And I hear your argument. You're saying he made an intent to file an application before that deadline, but he didn't actually file or complete an asylum application before the deadline, correct? That's correct, Your Honor. So if you would assume then that the Real ID Act applies for purposes of the next questions, that would be helpful. And that would be, if the Real ID Act applies, what is your basis for arguing that the credibility findings would not be sustained under the Real ID Act? If the Real ID Act does apply, it still requires that corroborating evidence be provided only if it's reasonably available. I think in this case, again, given the fact that the corroborating evidence, the petitioner did provide corroborating evidence in terms of passports, birth certificates, confirming his actual identity. The only issue in this case that the IJ had was whether this individual, Sunday Josiah Ibiagwa, was the son of a tribal chief in the village of Odi, this village that was razed and destroyed by the Nigerian government. That was the only issue. That town is in the Niger Delta, which is an extremely volatile area. And I think as a matter of fact and law, the evidence was not reasonably available, that Mr. Ibiagwa could not simply confirm his identity because as he testified, had lost complete touch with his family and friends, didn't know if they were still alive, was unable to reach them through several attempts. And that's the first component, the lack of reasonably available evidence. I think that the second component of that is that even if the Real ID Act does apply, I don't think it overrides the courts, the immigration judges, shifting of this burden of providing corroborative evidence to the government. And I think that raises very serious due process concerns. Whether the ---- But on a number of things which now don't have to go to the heart of the matter anymore, the I.J. had a whole list of things on which credibility, adverse credibility was based, even apart from whether he is who he is. So why would those not defeat the claim? I think that if you look at the I.J.'s decision, it suggests that all of these bases he had for finding the adverse credibility all went to Mr. Ibiagwa not being who he claimed he was. And if you look at the transcripts at numerous points, particularly in the discussions where the I.J. is granting the government additional stays to find this information, the I.J. specifically saying my only question is whether he is who he says he is. Who has that burden? I think that the law allows that burden to be placed on the petitioner, on the asylum applicant. I think in this case, and this is why I think there are unique circumstances here, the I.J. specifically placed it on the government. Counsel Judge Gould, I realize the I.J. asked the government to do this, but I thought in the record that the I.J. at least once or maybe twice told the petitioner, I need corroborating info from you. That is, he warned the petitioner that he had to come up with something. Your Honor, I think that's accurate. On September 6th, the I.J. did, during the course of one of these stays, inform Mr. Ibiagwa that he needed corroborative evidence and indicated that Mr. Ibiagwa should provide it if he had it. Immediately thereafter, however, the I.J. then went on to tell the government attorney that exactly how he wanted this investigation done. This discussion is at AR 441 through 446, but specifically delineates all the steps he wants the government to take to confirm the petitioner's identity. And I would suggest that in light of that specific directive to the government, Mr. Ibiagwa was reasonable to believe that it was the government's burden. You are out of time almost. Could I ask him one question? Yes, sure. This is not really directly pertinent, but I understand the petitioner had a habeas petition pending in the District Court in Arizona, right? That's correct. Do you know what's happened to that? I actually do not represent the petitioner on that, but that was granted by the magistrate. Judge Bolton, I believe, rejected the magistrate's suggestion, and that was so ultimately that was denied. He's refiled, I think last week, requesting a like to get parole or something out of e-law, right? Yes. All right. I'm just curious. Thank you very much. Good morning, Your Honors. Christopher Walker representing the Attorney General. And just to clarify what counsel said, on September 14th of 2007 the District Court did dismiss the order, or the habeas petition in that other case. So that's no longer pending. That's no longer pending. That's correct. And this case appears to be complicated somewhat by the disconnect in the briefing, but it's quite a simple case of exhaustion and of the aggravated felony bar. But I did want to step back a bit on the corroboration claim. Under the statute and under this circuit's precedent, the corroboration, it's a disconnect here because the IJA did not rely on corroboration to find petitioner incredible. He found petitioner incredible, as the VA explained, based on seven different grounds independent of the corroboration. No, it's obvious in the transcript. The IJA wanted corroboration, right? That's correct, Your Honor. Whether he put the burden on the government or not, you know, he gave the government the opportunity. Government, I think whoever it was in the immigration court, that lawyer thought, well, they could probably find something. But, see, here's really my question. If the government, you know, couldn't do it through the embassy there, through all their efforts, how can you conclude that, you know, that the petitioner could do it, that, you know, that corroboration was available to the petitioner, if the government couldn't find the same evidence? Your Honor, as an initial matter, it wouldn't matter because there were seven other grounds that he found him adverse or not credible that did not deal with corroboration. But the IJA did list also six reasons why he felt the evidence was reasonably available, and that's on AR-249. The first is that he resided in a town for over 18 years. The second is that he ---- What is a town that's been wiped out? Yes. I don't know, Your Honor. The town, I don't know. That's correct. The second is that he did have a ---- I could live in San Francisco my whole life, but if it's destroyed in an earthquake along with all the records, I guess it wouldn't matter if I lived here one year or 25. The second reason, Your Honor, is that he had a friend who got his birth certificate who lives in Nigeria who got some evidence for him but nothing else. The third reason is that he has a ---- his spouse lived in the United States, and although she was not from Nigeria ---- Yeah, I noticed he left that, but how was that supposed to ---- Your Honor, this court in Unakaluhu found that to be a reason that supported ---- Well, maybe in current circumstances, but we're talking about evidence back in Nigeria, right? No. Also, evidence can also come from the United States, from people that know him here who could testify to the fact that he did come from that ancestry. I mean, in Unakaluhu, again, that's something that the DA relied on and cited. It's something we cited in our brief. This court found that that was sufficient. In addition to that, the I.J. found that Respondent made no attempt to find any evidence when he was put on notice or even ask what type of evidence would be sufficient. And those six reasons, again, they go to a factual question that this court can't answer based on aggregated felony bar, and moreover and more importantly, they go beyond the I.J.'s seven reasons for finding him adversely credible. It's just not relevant whether the I.J. erred in asking for corroboration because he's not credible. And each of those seven reasons, if you look at it, Judge McKeon, you asked the question, post-Real ID Act, would any of these reasons be invalid? But even pre-Real ID Act, all we have to do is find one, and there's five, six, if not all seven, independently are enough under the substantial evidence review question to uphold that. Again, backing up, though, these types of factual questions are not before this court because there is an aggravated felony. This Court's decision in Bresenio makes it abundantly clear that this Court, when an individual is removed based upon a crime, even if the I.J. does not identify it as a crime, an aggravated felony, if it is an aggravated felony, the bar would still apply on his petition for review. Honest, that doesn't apply to the cat claim, does it? No, Your Honor. Actually, I'm not sure. There's no bar, removability bar for cat, is there? No, Your Honor. But I'm not sure if it's a jurisdictional bar, subsection C is not about ‑‑ it's not barring asylum or it's barring review of the factual determination. So I actually believe that, yeah, it would be barred by subsection C under the aggravated felony bar. But moreover, the argument here, the washover, the I.J. and the BIA explicitly dealt with the withholding claim and the cat claim separately. The I.J. made an explicit finding on AR 248 that the documenting evidence of country conditions in this case, without more is insufficient to carry the respondent's burden to prove that he is more likely than not subject to either persecution or torture in Nigeria, citing the Camalthus case that explains that you have to look at documentary ‑‑ you have to say that you looked at the documentary evidence. The BIA similarly, after finding that he had not met his burden for withholding, then said that, and this is AR 4, that the respondent has not identified any reversible error in the immigration judge's conclusion that respondent failed to prove that he more likely than not faces torture in Nigeria, citing its decision in NRA and BIA, which is a purely cat decision. In that case, there was no withholding claim. So it's very clear that the washover, there was no washover here. The I.J. and the BIA both independently reviewed each of the separate claims for withholding the cat. And then moving on to the exhaustion claims, the strongest, this filed versus made distinction, the BIA was never put on notice that that was an argument being made below. The I.J. did make a finding that he was subject to the Real ID Act, because he filed his application after the deadline. And he didn't in anywhere in his appeal raise the fact that the Real ID Act should not apply, because he indicated an intent. And if you look at the record, it's not even clear that he indicated an intent to apply before May 11, 2007. And I believe, unless there are any other questions, I do, again, refer you to the Vidal decision on their aggregated felony bar that makes very clear, not just cited in the 28J letter, note 18, but I also refer the Court to note 13 of the Vidal decision that actually says that 487 would be an aggregated felony, because it requires an intent to deprive someone's property, whereas the statute issued in Vidal, Section 108.5.1, would not be, because it explicitly includes the word accessory. And in this statute, the Grand Theft Statute, there's no inclusion of accessory or accomplice liability in the statute. And all that, we still have the authority to review the issues of law, correct? That's correct, Your Honor. And I couldn't quite understand your 28J letter, so maybe you can. I thought you were saying, well, there's really this aggravated felony bar, but maybe it doesn't really matter, because he says his claims are there couched in terms of a legal challenge. So we're kind of right back where we started. Well, you're right, Your Honor. I'm not sure what you're saying. Well, the last sentence was the key, to the extent that there are legal challenges. And he styles them as due process. But whether the IJ found that he could have reasonably obtained evidence, that's a factual determination. Whether the IJ found, put him on note, all of these are factual determinations. Whether there's substantial evidence, whether certain findings go to the heart of the claim or not, whether they are minor or whether they're speculative, all of those are things that the subsection C, the aggravated felony bar, does not allow you to review. And so if there are purely legal, as in purely statutory interpretation questions, or due process violations, this Court would have the opportunity to review those. But most of the claims that are raised in the brief on appeal for the first time are not those. They're definitely attacks at the substantial evidence review or at abuse of discretion. And then the final point I'd like to make is if, for some reason, the Court were to find that one of these claims was exhausted or that exhaustion should be excused, the only proper remedy here would be to remand the BIA under Ventura in order to address these claims in the first instance. Petitioner does not appear at all to claim that they were addressed in the BIA's decision. And as such, the BIA needs to have the chance to review it in the first instance. So let me just ask you, of these claims, which it's hard to say, you know, what's exhausted and what's not exhausted. I mean, basically it challenges his denial of asylum, which would seem to incorporate whether or not the REAL ID Act applies and whether it applies correctly, doesn't it? No, Your Honor. The claim that the REAL ID Act should not apply was never raised below. That's not an argument. That's a claim. And, of course, the reason we have exhaustion is to put the agency on notice that it needs to address a statutory question, for instance. And he's framed these as statutory questions, and if you read through the appeal to the BIA, the appeal to the BIA is that he met his burden of proof, and that the IJ erred in finding that he hadn't and that he was incredible. It had nothing to do with these types of questions of law, which, of course, the agency is in charge of interpreting in the first instance. And so there's just no notice here that those were here. And the key, again, in the tall decision that the 28J letter that we sent in, the key is whether the BIA could have remedied this in the first instance. And the question to answer all of the claims he brings up is yes. If the BIA would have been put on notice, it could have remedied all of the claims that he brings in the first instance, and it didn't have the opportunity to do so. Thank you, Your Honor. You have a minute for rebuttal, if you would like to take it. Would you just address the government's exhaustion argument that it's not enough just to appeal the denial of the asylum and withholding, and then to raise the new issues on appeal? Sure, Your Honor. I think if you look at Mr. Arriaga's appellate brief, it's clear that he did exhaust these arguments. I think the case law is such that you do not have to raise the exact arguments. The purpose of the exhaustion doctrine is to allow you to refine your arguments on appeal, to refine arguments to the utmost extent so that they're as clear as possible for appeal. The BIA did have an opportunity to rule on these issues, because Mr. Arriaga did raise them. He raised the issue of the BIA. He told the BIA that Real ID Act didn't apply because he intended to make one but didn't make an application? That's an argument that he did not make that specific argument. He didn't make anything that would let the BIA kind of divine the argument? I don't think he did, although on that specific argument he did. Is that a little telling in terms of exhaustion? I don't think it is. I think even under the Talvey-McCasey case it says that that's the kind of question of law that this case, this court would have jurisdiction to resolve even if it were not raised specifically before the BIA. Again, Mr. Arriaga did ask the BIA to overturn the ruling of the IJ on the basis that the court misinterpreted and erroneously applied the Real ID Act. I wouldn't suggest that the BIA would have a reasonable opportunity to do it on this basis, the earlier petition for asylum. But I do think that even under Talvey-McCasey, again, the 28J submission makes clear this is the kind of question of law that this court can review even if it's not completely exhausted. Thank you.
judges: Tashima, McKeown, Gould